753 S.E.2d 242

**In the Matter of C. Kevin MILLER, Respondent.**

**Appellate Case No. 2013–002345.**

**No. 27342.**

Supreme Court of South Carolina.

Submitted Dec. 9, 2013.

Decided Jan. 2, 2014.

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for the Office of Disciplinary Counsel.

C. Kevin Miller, of Spartanburg, Pro Se.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to disbarment. We accept the Agreement and disbar respondent from the practice of law in this state, retroactive to March 7, 2012, the date of his interim suspension. *See In re Miller*, 397 S.C. 7, 723 S.E.2d 211 (2012). The following matters are addressed in the Agreement.

## Matter A

Respondent failed to timely respond to an initial inquiry by ODC into this matter.

## Matter B

Respondent represented client in a workers' compensation case that was settled in 2006. Client was to receive $91,000 from the settlement, but for personal reasons asked respondent to hold the funds and disburse them as requested. Respondent failed to safeguard the funds, and although he made some disbursements, he did not always make disbursements at the time or in the amount requested. In addition, the majority of the disbursements were made from respondent's operating account rather than his trust account and at a time when the trust account in question had a balance of less than $75.

In 2010, an attorney representing client in another matter learned of the situation with the workers' compensation settlement funds and, along with client, demanded an accounting from respondent. Respondent had not maintained a ledger for the funds and was unable to provide a timely accounting. Eventually, respondent determined he owed client $45,000, and he issued a certified check to client in that amount. After further review of his records, respondent determined he owed client a balance of $4,400, and he issued another certified check to client in that amount. Respondent cannot establish the whereabouts of client's funds during the period they were entrusted to respondent's care.

Finally, respondent did not respond to the notice of investigation in this matter until after receiving a *Treacy* letter,[1] and after being placed on interim suspension, failed to respond to two additional requests for information.

## Matter C

In early 2011, respondent closed a refinance transaction for client. Respondent was to submit a payoff of $67,687.06 to client's former lender, but failed to do so. Instead, respondent used the funds for other purposes and took no action when client advised him more than once that client was still receiving bills from his former lender. When the former lender began foreclosure proceedings approximately six months after closing, client filed a complaint with the Commission on Lawyer Conduct. Respondent then paid the outstand-

---

1. *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

ing balance with funds he obtained from another source discussed below.

Respondent initially informed ODC his failure to submit the payoff in a timely manner was an error and oversight. After additional inquiry, respondent acknowledged he failed to safeguard the payoff funds, had not been reconciling the trust account into which the funds had been placed, and was not maintaining full and accurate trust account records as required by Rule 417, SCACR.

### Matter D

For many years, respondent failed to properly manage the trust account involved in Matters B and C above. Trust account records provided to ODC demonstrated respondent failed to safeguard funds belonging to the clients and failed to comply with Rule 417, SCACR. Moreover, the records were not sufficient to gain a complete understanding of the management of the account. Respondent failed to maintain or produce ledgers for many of his clients. He also issued checks to himself in connection with clients for whom he produced no ledgers. Many disbursements from the trust account could not be linked to corresponding deposits. Some of the ledgers produced were inaccurate, incorrectly reflecting a zero balance when, in reality, disbursements exceeded deposits. At least one ledger reflected a zero balance when there should have been a small amount of funds remaining. Respondent submitted journals that did not capture all account transactions. Respondent did not produce any reconciliation reports for the trust account and admitted he routinely failed to conduct monthly reconciliations. After his initial compliance with a subpoena, respondent twice submitted corrected journals and ledgers to ODC after comparing his records to bank statements.

Respondent also commingled his money with that of his clients and withdrew more money for his own uses than he ever placed into the account. In September 2009, respondent placed $70,000 in personal funds into the trust account. In June 2011, shortly before he submitted the payoff in the refinance matter, respondent placed another $85,000 in personal funds in the account. He explained he did not put the money into his operating account because he wanted to avoid

it being taxed as income. However, he also needed to infuse the account with money to make up for his failure to safeguard the funds of the clients in Matters B and C. After making the deposits, respondent used the trust account to pay personal and professional expenses, but did not keep track of the personal funds by ledger or otherwise. Respondent paid his home mortgage, home utility bills, cell phone bills, credit cards, insurance, shopping bills, personal loans, and other personal expenses from the account. He also paid for business expenses, including online continuing legal education courses, payroll, computer expenses, furniture, and telephone service from his trust account. Before the account was closed in October 2011, respondent placed an additional $6,110 in personal funds into the account to cover NSF items and fees. According to his own admittedly inaccurate records, respondent disbursed at least $175,177 for personal and office expenses, $14,067 more than the $161,110 in personal funds he placed into the account. By spending more than he personally had on deposit, respondent misappropriated client funds.

Respondent also failed to safeguard funds he was holding for the seven children of a widow and her late husband, who was killed in a work-related accident. Although a complaint was not filed, the Lawyers' Fund for Client Protection approved claims that respondent misappropriated $62,956.72 from the children. Respondent did not provide ODC with a ledger for the funds, but did write checks to the children's mother from the account and wrote himself at least one $500 check associated with the family.

### Matter E

Due to lack of proper management and recordkeeping, respondent chose to stop using the trust account involved in the matters above. However, because of his improper handling of the account and inadequate recordkeeping, he failed to have sufficient funds in the account to cover outstanding items and seven items, totaling $3,060.36, were paid against insufficient funds. Some of the items were for matters involving clients and some were disbursements for payroll or personal expenses. Respondent deposited $6,110 in personal funds into the account to cover these items, plus fees and any other outstanding items. Ultimately, the bank closed the account

and charged off a negative balance of $122.38, but respondent paid the bank for the charged off amount.

## Matter F

Respondent failed to respond to the notice of investigation in this matter, providing a response only after receiving a *Treacy* letter. In addition, respondent failed to respond to ODC's written request for additional information until he received a reminder letter. Although it was determined respondent did not commit misconduct in the matter, he did violate Rule 8.1(b) by failing to timely respond to ODC's inquiries regarding the matter.

## Matter G

Respondent opened a new trust account in July 2011. The account had a balance of $337.57 when respondent deposited a $20,000 settlement check for a domestic case. The next day, respondent issued a $500 check to himself that was not associated with the domestic case. He was able to cash the $500 check and the check cleared because of the intervening deposit. However, when the $19,117 check to his domestic client cleared the account, insufficient funds remained to pay the $893 check respondent issued to himself for fees in the domestic case. The bank honored the check and respondent deposited personal funds to correct the account balance.

## Matter H

Client hired respondent to help him get an abandoned road reopened so he could have access to his landlocked property. Respondent did not work diligently on client's behalf and did not keep him informed of the status of the matter. The Lawyers' Fund for Client Protection approved payment to client of $905, the entire fee client paid to respondent.

## Matter I

The Resolution of Fee Disputes Board issued a $1,450 award against respondent in favor of a former client. Respondent did not pay client pursuant to the award. Respondent does not dispute client is entitled to the money, but states he does not have the funds to pay client at this time. The Lawyers' Fund for Client Protection paid client $1,450.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring lawyer to act with reasonable diligence and promptness in representing a client); Rule 1.4 (requiring lawyer to keep a client reasonably informed about the status of a matter); Rule 1.15(a) (requiring a lawyer to keep client funds separate from the lawyer's own property, to safeguard client property and keep complete records of funds in such accounts); Rule 1.16(d) (requiring a lawyer to return any unearned fee after termination of representation); Rule 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact to a disciplinary authority); Rule 8.1(b) (knowingly fail to respond to a lawful demand for information from a disciplinary authority); and Rule 8.4(d) (providing it is professional misconduct for a lawyer to engage in conduct involving dishonesty, deceit or misrepresentation). Respondent also admits he violated Rule 417, SCACR, which sets forth requirements for financial recordkeeping.

Finally, respondent admits his conduct constitutes grounds for discipline under the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it is a ground for discipline for a lawyer to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers) and Rule 7(a)(5) (it is a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

## Conclusion

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state retroactive to March 7, 2012, the date of his interim suspension. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court. Within thirty days of the date of this opinion, respondent shall enter into a

502

payment plan with the Commission on Lawyer Conduct to (1) repay costs incurred by the Commission and ODC and (2) reimburse the Lawyers' Fund for Client Protection for all amounts paid to respondent's former clients. Respondent may not apply for readmission to the South Carolina Bar until he has had a six-year forensic accounting and audit performed of all of this trust accounts by a certified public accountant (CPA), the CPA renders a report giving reasonable assurance that all injured parties have been identified, and respondent has made restitution to all injured parties identified in the report.

**DISBARRED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.